# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51817-1-II |
| Respondent, | |
| v. | |
| MARCUS KEITH MCCLAIN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — A jury convicted Marcus McClain of a felony domestic violence court order violation. McClain argues that the State violated his substantive due process rights in the months leading up to his trial when it failed to comply with the court's order requiring that he be transferred to the state hospital for a competency evaluation. He contends that this violation warrants reversal of his conviction. He also argues that the State committed prosecutorial misconduct in its rebuttal closing argument when it told the jury to disregard relevant evidence. In the event we conclude that the argument was not prosecutorial misconduct, McClain contends that he received ineffective assistance of counsel based on his attorney's failure to object to the State's argument. Finally, McClain argues that the court erroneously calculated his offender score.

We affirm McClain's conviction but remand for the trial court to correct McClain's criminal history and offender score in his judgment and sentence.

FACTS

I.  BACKGROUND AND CONVICTION

On July 22, 2016, the police responded to a call that McClain's mother, Annette,[1] was dead in her apartment.  Although the medical examiner later reported that Annette had died from natural causes, the police initially treated her death as a potential homicide.

During the investigation, Annette's apartment manager reviewed surveillance footage from July 20.  She saw McClain entering and leaving the apartment complex.  At this time, a no-contact order prohibited McClain from contacting Annette.  The no-contact order was entered in 2015, and McClain's signature appeared on it.

The police interviewed McClain.  After waiving his *Miranda*[2] rights, McClain admitted to visiting Annette in her apartment on July 20.  They had an argument over his current dating relationship, and a fight ensued in which Annette received injuries.

The State charged McClain with two counts of a felony domestic violence court order violation.  Count I alleged a felony based on McClain's two previous convictions for violating no-contact orders.  Count II alleged a felony because the conduct that violated the order constituted an assault.  McClain pled not guilty, and the court set a trial date.

However, on May 5, 2017, the court found that McClain was not competent to stand trial.  Four days later, the court ordered that McClain receive competency restoration treatment at Western State Hospital (WSH).  The court's order required McClain to be transported to WSH within 7 days.

---

[1] Because McClain and his mother share the same last name, we refer to her by her first name.  We intend no disrespect.

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

On June 13, when he still had not been transported to WSH, McClain filed a motion to dismiss his criminal charges. The court denied McClain's motion.

On July 18, McClain was transferred and admitted to WSH for competency restoration treatment. On August 30, the Department of Social and Health Services opined that McClain had regained competency. Subsequently, the court found McClain competent to stand trial.

At trial, Annette's apartment manager testified that McClain sometimes came to the apartment complex and that Annette would usually go to the main entrance to let him in. The manager stated that the entrance McClain used on July 20 had cameras on both the inside and outside of the building, whereas the other entrance only had a camera on the inside of the building. Thus, she stated that the entrance McClain used would not be the best entrance if he had been trying to avoid detection.

McClain questioned both the police officer who responded to Annette's apartment and the detective assigned to investigate Annette's death. He asked both whether they were aware if Annette requested or wanted the no-contact order. Both responded that they did not know whether she wanted it or not.

McClain testified that he did not know an active no-contact order existed on July 20. He and Annette had gone to court to have the order recalled, and the judge did so. Additionally, McClain testified that Annette had told him that the order had been recalled and she showed him paperwork confirming it had been. After the order had been recalled, he started visiting Annette and helping her. McClain stated that he would not have gone to Annette's apartment if he knew a no-contact order existed. McClain denied both intentionally violating the no-contact order and intentionally injuring Annette.

McClain did admit to previously violating four court orders that restricted contact.

The court then instructed the jury. Relevant here, the to-convict instruction for count I required the jury to find, among other elements, that a no-contact order existed on July 20, 2016, that McClain "knew of the existence of [the no-contact] order," and that he "knowingly violated a provision of th[e] order." Clerk's Papers (CP) at 117. Another jury instruction provided: "It is not a defense to a charge of violation of a court order that a person protected by the order invited or consented to the contact." CP at 122.

In the State's closing argument, it recognized that it had to prove that McClain knew of the existence of the no-contact order and argued that the evidence showed he did. The State also discussed McClain's testimony that the no-contact order had been recalled but noted that there was "no evidence of that." Report of Proceedings (RP) (Jan. 11, 2018) at 331.

In McClain's closing argument, he discussed entering Annette's apartment through the entrance with surveillance cameras. McClain argued how he and his mother would not have taken such conspicuous actions if he believed a no-contact order existed. McClain also argued that he would not have admitted to the detective who interviewed him that he visited Annette's apartment if he knew about the no-contact order. He later suggested that it was unclear whether the no-contact order had in fact been recalled.

McClain further argued that all the evidence showed was that a no-contact order existed in 2015, but "[t]here was no evidence that Annette . . . wanted this no contact order or she had not taken steps to get this no-contact order recalled." RP (Jan. 11, 2018) at 345-46.

McClain concluded closing argument by conceding that the State had proven, among other elements, that a no-contact order existed. However, the State had "not proven beyond a reasonable doubt that he knew about the existence of the order." RP (Jan. 11, 2018) at 355.

In its rebuttal closing, the State argued that whether Annette wanted the order or not was "not relevant to the proceedings." RP (Jan. 11, 2018) at 367. The State continued:

> [W]hether or not [Annette] wanted that order is not an element the State has to prove. In fact, the jury instructions we talked about indicate that whether or not she even invites him over, wants the contact, that's not a defense. You don't get to reference that. So you need to disregard counsel's arguments to that effect, is that it's not a defense in this case whether or not she wanted this order or not.
> . . . .
> [McClain] doesn't want you to believe that the order was in effect, but there's no evidence that it wasn't.

RP (Jan. 11, 2018) at 367, 369.

The jury convicted McClain only of count I. The jury also returned a special verdict that McClain and Annette were members of the same family or household.

II.    SENTENCING

At sentencing, the State asserted that McClain had an offender score of 10 based on his prior felony and misdemeanor convictions. The State produced certified copies of McClain's prior convictions. Relevant here, the State argued that felony convictions from 2005 and 2012 counted as two points each and two misdemeanor convictions from 2014 counted as one point each.

Regarding McClain's 2012 felony conviction, the State presented the following evidence. McClain pled guilty to a second amended information that included a charge of "Unlawful Imprisonment DV" as count II. CP at 255.

McClain's 2012 judgment and sentence stated that the court found him guilty of unlawful imprisonment domestic violence as charged in the second amended information. However, the judgment and sentence stated: "The State has pleaded and proved that the crime charged in Count(s) I involve(s) domestic violence." CP at 229.

Regarding McClain's 2014 misdemeanor convictions, the State showed that it charged McClain with two counts of violation of a court order. In addition, the crimes were against a

5

family or household member contrary to RCW 10.99.020. McClain pled guilty to the charges. McClain's judgment and sentence noted that he was charged with two counts of a no-contact violation "DV." CP at 271. For these charges, the court found that "domestic violence was pled and proved." CP at 271.

The court found that McClain had an offender score of 10 and a standard range sentence of 60 months. RCW 9.94A.515, .533(3)(c); RCW 9A.20.021. The State requested a standard range sentence. McClain requested an exceptional sentence below the standard range of 24 months of confinement.

The court imposed an exceptional sentence below the standard range of 48 months of confinement with 12 months of community custody. McClain appeals.

## ANALYSIS

I. SUBSTANTIVE DUE PROCESS

McClain argues that the 70-day delay in admitting him for competency restoration treatment violated his substantive due process rights. McClain contends that the appropriate remedy is for us to reverse his conviction and dismiss his case with prejudice. We disagree with McClain's proposed remedy.

"'Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(15).[3] Under RCW 10.77.050, "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues."

---

[3] The statute was amended in 2016, which became effective in April 2018. LAWS OF 2016, ch. 29, § 408. However, where there has been no change in the relevant language, we cite to the current version of the statute.

When there is reason to doubt a defendant's competency to stand trial, the trial court must order an expert to evaluate the defendant's mental condition. RCW 10.77.060(1)(a). Following the evaluation, if the court finds the defendant incompetent, the court shall stay the criminal proceedings and may commit the defendant to restoration treatment. RCW 10.77.084(1)(a)-(b). If the defendant's competency is restored following treatment, the court must lift the stay and continue the proceedings. RCW 10.77.084(1)(c).

The Fourteenth Amendment of the United States Constitution "requires the State to admit an incompetent defendant to a state hospital for competency restoration treatment within seven days of the order calling for treatment." *State v. Hand*, 192 Wn.2d 289, 296, 429 P.3d 502 (2018). The State violates an incompetent criminal defendant's substantive and procedural due process rights when it refuses to admit them to restorative treatment in a timely manner. *Hand*, 192 Wn.2d at 296.

*Hand* has nearly identical facts to what occurred here. In *Hand*, after finding the defendant incompetent, the trial court ordered that WSH admit the defendant for restorative treatment within 15 days. 192 Wn.2d at 292. After WSH failed to comply with the order, the defendant filed various motions, including motions to dismiss alleging due process violations. *Hand*, 192 Wn.2d at 292, 298. The court denied the motions. *Hand*, 192 Wn.2d at 292-93. WSH eventually admitted the defendant for treatment 76 days after the court's order. *Hand*, 192 Wn.2d at 298. After being found competent, he was convicted. *Hand*, 192 Wn.2d at 293.

Although the court concluded that the delay violated the defendant's substantive due process rights, the court also concluded that dismissal with prejudice, the defendant's proffered remedy, was "simply not warranted under the[] facts." *Hand*, 192 Wn.2d at 302.

The facts of McClain's case are very similar to those in *Hand*. Here, the court found that McClain was not competent to stand trial and ordered that McClain receive competency restoration treatment at WSH within 7 days. After the court's deadline passed, McClain filed a motion to dismiss. The court denied McClain's motion.

McClain was eventually transported to WSH 70 days after the trial court issued its order, while the defendant in *Hand* was transported 76 days after the court's order. Subsequently, the court found McClain competent to stand trial, and he was later convicted. On appeal, McClain argues that his convictions should be dismissed with prejudice.

We conclude that *Hand* controls because the facts here are nearly identical to those in *Hand* and the relief McClain seeks is identical to the relief sought in *Hand*. Accordingly, we conclude "that dismissal with prejudice is not warranted." *Hand*, 192 Wn.2d at 302.[4]

II.    PROSECUTORIAL MISCONDUCT

McClain argues that the State committed prosecutorial misconduct in its rebuttal closing argument because its argument relieved the State of its burden to prove McClain's knowledge beyond a reasonable doubt. McClain contends that the argument was flagrant and ill-intentioned because it went to the only disputed element and could not have been cured by an instruction. We disagree.

A.    Legal Principles

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record

---

[4] McClain makes an identical argument in his statement of additional grounds for review. We do not independently consider this argument. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *Glasmann*, 175 Wn.2d at 704.

We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

During closing argument, a prosecutor "has wide latitude in drawing and expressing reasonable inferences from the evidence." *State v. Hoffman*, 116 Wn.2d 51, 95, 804 P.2d 577 (1991). But a prosecutor may not argue facts not in evidence or make arguments appealing to a jury's passion that prejudices the defendant. *State v. Belgarde*, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988); *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

In a prosecutorial misconduct claim, a defendant who fails to object to improper conduct may be deemed to have waived the issue on appeal unless the prosecutor's statements are so flagrant and ill-intentioned that the resulting prejudice could not be corrected by a jury instruction. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that no curative instruction would have eliminated the prejudicial effect and the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 761. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remarks. *Emery*, 174 Wn.2d at 762.

Here, the court instructed the jury that, to convict McClain, it had to find beyond a reasonable doubt that a no-contact order existed on July 20, 2016, that McClain knew of the

existence of the no-contact order, and that he knowingly violated the order. Additionally, the court instructed the jury that it was not a defense if Annette invited or consented to McClain contacting her.

At trial, McClain testified that he and Annette went to court and the judge had recalled the no-contact order. He also testified that Annette had shown him the paperwork recalling the order. However, no corroborating evidence existed.

In the State's closing, it told the jury that it had the burden of proving every element of the crimes beyond a reasonable doubt. It then argued the supporting evidence.

In his closing, McClain argued how the evidence only showed that a no-contact order was issued in 2015. He claimed that no evidence suggested whether Annette wanted the no-contact order or whether she had taken steps to recall the order. While McClain's argument focused on the fact that he did not believe an order was in place, he also asked the jury: "If there's a no-contact order in place, would [he] be so open and blatant about the[] no-contact order violation?" RP (Jan. 11, 2018) at 342. He also suggested that it was unclear whether the no-contact order had in fact been recalled.

The State's rebuttal closing argued that, because no evidence suggested that the order was not in place on July 20, whether Annette did or did not want the no-contact order was irrelevant as to whether the order had in fact been recalled.

We conclude that the State's argument was proper. While McClain conceded in closing argument that the State had proved the existence of the no-contact order, much of his testimony seemed to dispute that element. Additionally, a reasonable view of McClain's closing argument is that he used the evidence that Annette did not want the no-contact order to dispute both whether the order was in fact in place on July 20 and whether he knew of the order's existence at that time.

Thus, because McClain's testimony and closing argument appeared to dispute the existence of a no-contact order on July 20, 2016, the State properly argued that Annette not wanting the no-contact order was irrelevant.

III.   INEFFECTIVE ASSISTANCE OF COUNSEL

McClain argues that the he received ineffective assistance of counsel when his attorney failed to object to the above-described argument by the State and that he suffered prejudice. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both that defense counsel's representation was deficient and that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

Representation is deficient if, after considering all the circumstances, the performance "falls 'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We do not consider matters outside the trial record. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).

11

Additionally, where the appellant claims ineffective assistance based on his trial counsel's failure to object, the appellant must also show that such an objection, if made, would have been successful in order to establish deficient performance. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

As discussed above, we conclude that the State did not make an improper argument. Therefore, McClain's counsel was not deficient for failing to object. *Gerdts*, 136 Wn. App. at 727.

IV.   OFFENDER SCORE

McClain argues that the court erroneously calculated his offender score as 10, when it should have been 6. McClain contends that two of his prior felonies should have only counted as one point and two prior misdemeanors should have counted as zero points.

The State agrees that McClain's 2005 felony conviction should only have counted as one point. However, the State argues that the court properly counted his other prior offenses. We agree with the State.

A.   Legal Principles

Under Washington's Sentencing Reform Act of 1981, the standard sentencing range for any given offense is a function of the offense's seriousness level and the defendant's offender score. RCW 9.94A.525. The offender score is calculated by counting the prior and current convictions in accordance with RCW 9.94A.525. The State has the burden to prove prior criminal convictions by a preponderance of the evidence. *State v. Ramirez*, 190 Wn. App. 731, 733, 359 P.3d 929 (2015). Current felony offenses are treated as if they were prior offenses when scoring the other crimes being sentenced. RCW 9.94A.525(1), .589(1)(a). "We review offender score calculations de novo." *State v. Hernandez*, 185 Wn. App. 680, 684, 342 P.3d 820 (2015).

B.    Prior Felonies

Generally, if the current conviction is a nonviolent offense, prior felony convictions count as one point.  RCW 9.94A.525(7).  However, where the current offense is a felony domestic violence offense as defined in RCW 9.94.A.030, each adult prior felony conviction, where domestic violence was pleaded and proven after August 1, 2011, counts as two points.  RCW 9.94A.525(21)(a).

Under RCW 9.94A.030(20), "'[d]omestic violence' has the same meaning as defined in RCW 10.99.020 and 26.50.010."  Under RCW 10.99.020(5), "domestic violence" includes but is not limited to certain crimes, including unlawful imprisonment and violations of a no-contact order, when committed by one family or household member against another.

The parties agree that the McClain's 2005 conviction occurred before August 1, 2011; therefore, it should have only been counted as one point.  We agree.

Regarding McClain's 2012 conviction, McClain pled guilty to count II, unlawful imprisonment—domestic violence, and count III, assault in the third degree.  In his statement on plea of guilty, McClain acknowledged that the amended information charged him with "Unlawful Imprisonment DV" as count II.  CP at 255.  The court found McClain "guilty as charged."  CP at 264.

McClain's 2012 judgment and sentence stated: "The State has pleaded and proved that the crime charged in Count(s) I involve(s) domestic violence."  CP at 229.  McClain did not plead guilty to count I, and nowhere else in the judgment and sentence does it mention count I.

We conclude that the scrivener's error described above does not mean that the State failed to plead and prove that McClain's unlawful imprisonment charge involved domestic violence. Therefore, the trial court properly counted McClain's 2012 conviction as two points.

C.    Prior Misdemeanors

McClain argues that the court erroneously counted his two 2014 misdemeanor convictions as one point each. McClain contends that because the judgment and sentence "only list[ed] the offenses as 'DV' without specifying whether domestic violence, under any definition, was pleaded or proved," those misdemeanors did not fall within RCW 9.94A.525(21)(d). Br. of Appellant at 28. We disagree.

Generally, prior misdemeanors do not count toward a defendant's offender score. *State v. Rodriguez*, 183 Wn. App. 947, 955 n.4, 335 P.3d 448 (2014). However, under RCW 9.94A.525(21)(d), if the current offense is a felony domestic violence offense as defined in RCW 9.94A.030, a prior misdemeanor counts as one point if it was "a repetitive domestic violence offense as defined in RCW 9.94A.030, where domestic violence as defined in RCW 9.94A.030, was pleaded and proven after August 1, 2011." *See Rodriguez*, 183 Wn. App. at 957-58.

"Repetitive domestic violence" is defined as:

> (ii) Domestic violence violation of a no-contact order under chapter 10.99 RCW that is not a felony offense;
> (iii) Domestic violence violation of a protection order under chapter 26.09, 26.10, ***26.26, or 26.50 RCW that is not a felony offense.

Former RCW 9.94A.030(42) (2018).

In 2014, the State charged McClain with two counts of violation of a court order, domestic violence, contrary to RCW 10.99.020. McClain pled guilty. In his statement on plea of guilty, McClain acknowledged that the elements of each crime were "set out in the charging document." CP at 266. McClain's judgment and sentence noted that he was charged with two counts of a no-contact violation "DV." CP at 271. For these charges, the court found that "domestic violence was pled and proved." CP at 271.

Although McClain's judgment and sentence did not specifically mention the relevant statutes, based on the above, we conclude that the State nonetheless carried its burden to prove by a preponderance of evidence that McClain's 2014 misdemeanor convictions were repetitive domestic violence offenses as defined in chapter 9.94A RCW. Accordingly, we conclude that the trial court properly counted each misdemeanor conviction as one point.

Thus, the trial court erroneously calculated McClain's offender score as 10, when it should have been 9. But, an offender score of 9 still gave McClain the same standard range. *See* RCW 9.94A.515, .533(3)(c); RCW 9A.20.021; *State v. King*, 162 Wn. App. 234, 241, 253 P.3d 120 (2011).

We affirm McClain's conviction, but we remand for the trial court to correct McClain's criminal history and offender score in his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                                Melnick, J.

We concur:

Worswick, J.

Lee, C.J.