[No. 21028-6-III. Division Three. March 13, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRYSTAL RACHAEL REED, *Appellant*.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Susan M. Gasch*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies*, for respondent.

SCHULTHEIS, J. — Chrystal Reed appeals the judgment and sentence entered after she was convicted of second degree possession of stolen property. She first contends the trial court erred when it denied her CrR 3.5 motion to suppress. She also claims the trial court erred by adding one point to her offender score for sentencing purposes by finding the current crime was committed while she was on community placement for a prior drug crime. Finding no evidence of trial court error, we affirm.

## FACTS

On January 13, 2002, Deputy Chan Erdman responded to a call of a suspicious vehicle in the area of 5th and Carnahan in Spokane County. As he and another deputy investigated whether the vehicle was stolen, Ms. Reed drove slowly past the scene. Deputy Erdman, who recognized Ms. Reed from a prior encounter, wrote down the license plate number of the vehicle she was driving, just "to be cautious." Report of Proceedings at 6. Approximately three to five minutes later Ms. Reed approached the deputies' location on foot. Deputy Erdman decided to ask Ms. Reed whether she knew anything about the suspicious car they were investigating. Ms. Reed agreed to talk to the deputies. Deputy Erdman called dispatch regarding the license plate number of the car Ms. Reed had been driving. The vehicle was reported stolen. Ms. Reed claims Deputy Erdman asked her where the car she was just driving was located. She pointed to the southwest and told him that it was parked around the corner. At that point the deputy informed Ms. Reed that she was being detained while he investigated the dispatch report. He placed her in his patrol car and drove her to where she said the car was parked. Once the license plate and description was verified, he placed Ms. Reed under arrest at which time she was read her constitutional rights. She agreed to talk with the deputy. She told Deputy Erdman that a friend told her the car was stolen and asked her to remove it from the driveway, which Ms. Reed agreed to do. Ms. Reed was in the

process of abandoning the car when she drove past the deputies on 5th and Carnahan.

Ms. Reed was initially charged with first degree possession of stolen property, but the charge was later amended to second degree possession of stolen property. Prior to trial, a CrR 3.5 hearing was held to determine whether certain statements Ms. Reed made prior to and after being informed of her constitutional rights were admissible at trial. The court determined the statements, if any, made prior to being read her rights should be excluded at trial but the statements made after being read her rights were admissible. At the conclusion of a jury trial, Ms. Reed was convicted of second degree possession of stolen property. She was given a standard range sentence based on an offender score of eight. This timely appeal resulted.

DISCUSSION

### 1. Suppression Issue

■ Ms. Reed first claims the trial court erred when it denied her CrR 3.5 motion to suppress statements made to law enforcement officers prior to and after being given *Miranda*[1] warnings. Because custodial interrogation is considered inherently and presumptively coercive, officers must inform a suspect of his or her *Miranda* rights prior to such interrogation in order to preserve a suspect's right against compelled self-incrimination. *State v. Lavaris*, 99 Wn.2d 851, 856-57, 664 P.2d 1234 (1983). A confession obtained subsequent to an initial, unconstitutionally obtained confession is inadmissible as "fruit of the poisonous tree,"[2] since the post-*Miranda* confession is tainted by the illegality of the pre-*Miranda* confession. *Lavaris*, 99 Wn.2d at 857-58. However, in *Oregon v. Elstad*, 470 U.S. 298, 314, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985), the United States

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

Supreme Court held that a voluntary post-*Miranda* confession will be admissible if the pre-*Miranda* confession was voluntary and free from coercion. This is the rule that applies under the facts presented.

Ms. Reed complains that Deputy Erdman asked her to tell him where the car she had been driving was located, which amounts to a custodial interrogation in violation of *Miranda*. As a result, she claims the confession regarding her knowledge the car she was driving was stolen should have been suppressed as well. She is incorrect.

Although the trial court did not specifically determine whether Ms. Reed made a pre-*Miranda* confession, it did imply there was no custodial interrogation prior to her arrest. The court ultimately concluded there was no threat or coercion at the location of the initial contact between Ms. Reed and the deputies or at the location of the parked vehicle she had been driving, which makes any statements made voluntary. The record supports this conclusion, which, pursuant to *Elstad*, automatically makes the post-*Miranda* confession admissible.

We agree with Ms. Reed that the court's findings incorrectly state that she did not make any type of statement to the deputies prior to receiving her constitutional warnings. The record reveals Ms. Reed told the officers how to find the allegedly stolen vehicle, although it is disputed whether the so-called statement was verbal or nonverbal. Nevertheless, the court's ultimate conclusion, regarding lack of threat or coercion regarding that statement, is supported by the record.

## 2. Offender Score

Ms. Reed also contends her criminal history was improperly calculated when the trial court erroneously added one point, finding the current offense occurred while she was serving a period of community placement under a drug offender sentencing alternative (DOSA) sentence for a prior drug conviction. She claims a DOSA sentence is not

subject to a one-year term of community placement pursuant to RCW 9.94A.705. (While this is a true statement, it has nothing to do with the allegedly improper offender score issue.) The State, on the other hand, maintains the term "community custody" means the same thing as community placement regarding criminal history for sentencing purposes pursuant to former RCW 9.94A.525(17) (2001), which states: "If the present conviction is for an offense committed while the offender was under community placement, add one point." The State's argument is correct.

The parties agree Ms. Reed had, at a minimum, an offender score of seven. The parties also agree Ms. Reed had been convicted of a felony drug offense that occurred on December 26, 1999, for which she received the DOSA sentence. Specifically, Ms. Reed's DOSA sentence contained terms requiring 9.75 months in confinement, followed by 9.75 months of "community custody." Clerk's Papers at 33. Accordingly, there is no argument regarding the fact that Ms. Reed was subject to supervision through the Department of Corrections when the current offense occurred.

The statute defines community custody as that "portion of an offender's sentence . . . served in the community subject to controls placed on the offender's movement and activities by the department." Former RCW 9.94A.030(5) (2001). Community placement is statutorily defined as

> *that period during which the offender is subject to the conditions of community custody* and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned release. Community placement may consist of entirely community custody, entirely postrelease supervision, or a combination of the two.

Former RCW 9.94A.030(7) (2001) (emphasis added). We determine Ms. Reed was under community placement at the time of the current offense because she was subject to the conditions of the community custody ordered in her

DOSA sentence. As a result, her offender score was properly calculated as eight pursuant to former RCW 9.94A.525(17).

Affirmed.

BROWN, C.J., and KATO, J., concur.

Review denied at 150 Wn.2d 1013 (2003).