253 P.3d 120 (2011)
STATE of Washington, Respondent,
v.
Jon Jason KING, Appellant.
No. 28905-2-III.
Court of Appeals of Washington, Division 3.
June 14, 2011.
*121 Kenneth H. Kato, Attorney at Law, Spokane, WA, for Appellant.
Andrew Kelvin Miller, Julie Elizabeth Long, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.
KORSMO, J.
¶ 1 Jon King challenges the validity of his guilty plea, contending that the offender score was wrongly calculated. We agree that probation or supervision on an out-of-state criminal conviction does not count in a Washington offender score calculation. Thus, Mr. King's offender score was incorrect on one of his two convictions. Constrained by precedent, we reverse both.

FACTS
¶ 2 This case began with an automobile accident in Kennewick. An eyewitness saw Mr. King in the driver's seat and a woman, later identified as Laticia Wilks, in the passenger seat. Mr. King asked the witness to say that he was not driving. When the witness declined, Mr. King dragged Ms. Wilks, who had suffered multiple fractures in her legs, from the passenger's seat to the driver's seat.
¶ 3 Mr. King told officers that a man named "Hector" was the driver. Mr. King admitted to having seven alcohol beverages to drink, but denied that he was the driver. Police arrested Mr. King and discovered the car keys in his pocket.
¶ 4 Charges of vehicular assault and two counts of witness tampering ultimately were filed by amended information in the Benton County Superior Court. The latter charges arose from Mr. King's repeated efforts to induce Ms. Wilks to back his story. The parties ultimately reached a plea agreement and a second amended information was filed. The plea agreement indicated that the prosecutor would amend the existing vehicular assault charge from driving while under the influence to disregard for the safety of others.[1] The amendment also eliminated two aggravating factors on that charge and removed one count of witness tampering. The agreement recognized offender scores of 10 and 9, with identical ranges of 51-68 months on each count. The plea agreement called for the parties to recommend concurrent 55 month sentences on each count.
*122 ¶ 5 The court accepted Mr. King's guilty pleas to both counts and also imposed the requested concurrent 55 month sentences. The judgment and sentence recognized 10 prior convictions: (1) a 2002 DUI, (2) 2005 Second Degree Theft, (3) 2005 Second Degree Burglary, (4) 2004 Bail Jumping, (5) 1998 Residential Burglary, (6) 1997 Second Degree Theft, (7) 1993 Residential Burglary, (8) 1993 First Degree Burglary, (9) 1991 Residential Burglary, and (10) 2005 First Degree Burglary. The last conviction was an Oregon offense, while the three 1991-1993 era burglaries were juvenile offenses. The court also found that the current offenses had been committed while the defendant was on post-prison supervision for the Oregon burglary conviction.[2] Based on this history, the trial court concluded that the offender scores were 10 for vehicular assault and 9 for witness tampering.
¶ 6 Mr. King shortly thereafter began efforts to withdraw his guilty plea. He argued that the prosecutor had committed misconduct, there was no factual basis for the plea, and that his offender score was incorrectly calculated. The trial court denied the motion. Mr. King then timely appealed to this court.

ANALYSIS
¶ 7 Mr. King's appeal reprises the same three challenges presented to the trial court. We conclude that two of them are without merit, but we will not discuss those contentions because we agree with his claim that the offender score was wrongly calculated, requiring withdrawal of his guilty pleas.

Offender Score Calculation
¶ 8 The existence of the 10 prior convictions is not in dispute. Mr. King agrees that he has the 10 prior convictions; he challenges how those offenses apply to his case and whether he was on community placement at the time of the current crimes. The trial court correctly scored the defendant's convictions, but erred by including the Oregon community supervision in the offender score.
¶ 9 The standard sentencing range under Washington's Sentencing Reform Act (SRA) is a function of the seriousness level of the offense and the offender score. RCW 9.94A.525. The seriousness level is assigned by the Legislature. Both witness tampering and vehicular assault by disregard for the safety of others are Level III offenses.[3] RCW 9.94A.515.
¶ 10 The offender score is calculated by counting the prior and current felony convictions in accordance with the rules for each offense. RCW 9.94A.525. Current felony offenses are treated as if they were prior offenses when scoring the other crimes being sentenced. RCW 9.94A.525(1); RCW 9.94A.589(1)(a). Both convictions in this case are considered nonviolent crimes. RCW 9.94A.030(32), (53). Vehicular assault is scored pursuant to the commands of RCW 9.94A.525(11). As relevant here, that provision requires prior adult felonies to count as one point, prior juvenile felonies as one-half point each, and prior adult convictions for driving while under the influence (DUI) to count as one point. Witness tampering is scored in accordance with directives of RCW 9.94A.525(7). Each prior adult felony offense counts as one point, and prior juvenile felony offenses count one-half point each. Misdemeanor offenses do not count in the offender score. Id. Offender scores are rounded down to the nearest whole number. RCW 9.94A.525.
¶ 11 Application of these rules in this case is straightforward. Each of the six prior adult felonies counts as one point and total six points for each offense. The three prior juvenile felony adjudications score as one-half point in each case, adding another 1.5 points to the tally. Each current offense adds one point to the scoring of the other *123 crime.[4] RCW 9.94A.589(1)(a). Thus, these other offenses total 8.5 points for each crime.
¶ 12 The 2002 DUI conviction also adds another point to the vehicular assault score, raising that total to 9.5. RCW 9.94A.525(11). After rounding down to the whole number, Mr. King's offender scores are 9 and 8 respectively. The trial court reached scores of 10 and 9 by including the Oregon post-prison supervision to the tally.
¶ 13 RCW 9.94A.525(19) states:
If the present conviction is for an offense committed while the offender was under community custody, add one point. For purposes of this subsection, community custody includes community placement or postrelease supervision, as defined in chapter 9.94B RCW.
¶ 14 The referenced definitions used in chapter 9.94B RCW are found in RCW 9.94B.020, which states:
In addition to the definitions set out in RCW 9.94A.030, the following definitions apply for purposes of this chapter:
(1) "Community placement" means that period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned release. Community placement may consist of entirely community custody, entirely postrelease supervision, or a combination of the two.
(2) "Community supervision" means a period of time during which a convicted offender is subject to crime-related prohibitions and other sentence conditions imposed by a court pursuant to this chapter or RCW 16.52.200(6) or 46.61.524. Where the court finds that any offender has a chemical dependency that has contributed to his or her offense, the conditions of supervision may, subject to available resources, include treatment. For purposes of the interstate compact for out-of-state supervision of parolees and probationers, RCW 9.95.270, community supervision is the functional equivalent of probation and should be considered the same as probation by other states.

(3) "Postrelease supervision" is that portion of an offender's community placement that is not community custody.
(Varying emphases added.)
¶ 15 Finally, the definition for "community custody" is found in RCW 9.94A.030(5):
"Community custody" means that portion of an offender's sentence of confinement in lieu of earned early release time or imposed as part of a sentence under this chapter and served in the community subject to controls placed on the offender's movement and activities by the department.
(Emphasis added.)
¶ 16 Review of these extensive definitions establishes that the command of RCW 9.94A.525(19) to add one point to the offender score if the current offense was committed while the offender was under community custody applies only to the various forms of post-custodial supervision applied to offenders under the SRA. The underscored language of the above-quoted definitions emphasizes that community custody and community supervision are terms of art referring to SRA sentences. The italicized language of RCW 9.94B.020(2) above establishes that the Legislature understood there were times when Washington supervision needed to equate with the practices of other states. The Legislature, however, did not equate other states' supervision of felons with Washington's supervision for purposes of scoring crimes committed in this state.
¶ 17 We hold that RCW 9.94A.525(19) applies solely to community custody imposed for Washington convictions sentenced under the SRA. The trial court erred by including Mr. King's Oregon post-prison supervision in his offender score for these crimes. The correct tallies, computed previously, are 9 for *124 the vehicular assault count and 8 for the witness tampering.
¶ 18 The trial court erred in using offender scores of 10 and 9.

Remedy
¶ 19 Even though the offender score error had no effect on one of the two convictions, precedent requires that the guilty pleas be withdrawn on each offense. We reverse and remand the case to the trial court to withdraw the guilty pleas.
¶ 20 A guilty plea is involuntary and must be withdrawn when the defendant has been incorrectly advised of the offender score and accompanying standard range. State v. Mendoza, 157 Wash.2d 582, 589-591, 141 P.3d 49 (2006).[5] Plea agreements covering multiple counts are indivisible. State v. Bisson, 156 Wash.2d 507, 518-520, 130 P.3d 820 (2006); State v. Turley, 149 Wash.2d 395, 400, 69 P.3d 338 (2003). Thus, if there is error on one count of a multi-count agreement, the entire plea agreement must be set aside upon request. Turley, 149 Wash.2d at 400-401, 69 P.3d 338.
¶ 21 As to the vehicular assault charge, Mr. King was properly advised of the standard range of 51-68 months. Once an offender score reaches 9, the standard range does not change. RCW 9.94A.510 (Table 1). Thus, the fact that the court advised Mr. King that his offender score was 10 instead of 9 does not change his understanding of the consequences. He knew the standard range when he agreed to plead guilty.
¶ 22 It is a different situation with respect to the witness tampering count. Because the correct offender score was 8, the standard range dropped to 43-57 months. This was still within the agreed upon sentence.
¶ 23 Objectively viewed, this error does not appear to have harmed Mr. King nor could it reasonably have influenced the decision to plead guilty. He was already agreeing to a 55 month term on the vehicular assault count that had been amended down to lessen the potential sentence risk. The term on the witness tampering count was required to be served concurrently with the vehicular assault sentence. RCW 9.94A.589(1)(a). It could not be altered by an exceptional sentence since no aggravating factors were alleged (and, indeed, had been amended out of the case by the plea agreement). RCW 9.94A.535. A lesser concurrent term would not prejudice Mr. King in any way.
¶ 24 Although the error here does appear to be harmless, the Mendoza court expressly declined to evaluate the materiality of a scoring error in determining an appropriate remedy. 157 Wash.2d at 590, 141 P.3d 49. A case factually similar to this one is In re Personal Restraint of Bradley, 165 Wash.2d 934, 205 P.3d 123 (2009). There, as here, the standard range for a lesser, concurrent offense had been miscalculated and was lower than first determined. Id. at 937-938, 205 P.3d 123. Applying the Turley indivisibility rule, the court permitted Mr. Bradley to withdraw both of his guilty pleas. Id. at 941-944, 205 P.3d 123.
¶ 25 It appears the court has eschewed harmless error analysis in this circumstance for the clarity of a bright line rule. Since the facts of this case are largely indistinguishable from those of Bradley, we conclude that the trial court erred in not permitting the motion to withdraw the guilty pleas.
¶ 26 The judgment is reversed and the case remanded for further proceedings consistent with this opinion.
WE CONCUR: KULIK, C.J., and SIDDOWAY, J.
NOTES
[1] As noted by defense counsel at the time of the guilty plea, vehicular assault based on intoxicated driving is a "most serious offense" while vehicular assault committed with disregard for the safety of others is not. Former RCW 9.94A.030(29)(q) (2009).
[2] The Oregon sentencing court imposed a term of three years of post-prison supervision. Clerk's Papers at 283. The conditions of post-prison supervision found in ORS 144.102 are quite similar to Washington's.
[3] Vehicular assault by intoxication is a Level IV offense. RCW 9.94A.515.
[4] Mr. King's argument in this appeal neglects the other current offense when computing the offender score.
[5] Although this aspect of Mendoza could be considered dicta in light of the court's ultimate decision that the defendant had waived the issue, the court subsequently has applied Mendoza as controlling authority on this point. E.g., State v. Weyrich, 163 Wash.2d 554, 557, 182 P.3d 965 (2008); State v. Codiga, 162 Wash.2d 912, 925, 175 P.3d 1082 (2008).