FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 31, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 31, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | |
| | ) | No. 103546-2 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| MICAL DARION ROBERTS, | ) | Filed: July 31, 2025 |
| | ) | |
| Petitioner. | ) | |
| | ) | |

MADSEN, J.—Mical Darion Roberts was convicted in a bench trial of felony murder predicated on burglary as an accomplice. The United States Supreme Court established the test and this court adopted it: whether, after viewing *all* the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980) (*Green* II) (plurality opinion). Our decision in *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014), stated the test differently: review of a sufficiency challenge to a bench trial is *limited* to a trial court's ruling on findings of fact and conclusions of law. We granted review to address the proper test for a sufficiency challenge in a bench trial. We hold that

the test for sufficiency of the evidence was properly articulated in *Jackson*; the test was not at issue in *Homan* and that case did not alter the test.  We affirm.

BACKGROUND

In November 2018, Ricardo Villaseñor and his girlfriend, Jennifer Bolanos, were eating dinner in the bedroom of Villaseñor's basement apartment.  Bolanos heard a noise like "someone kicked in the front door" upstairs, followed by shuffling.  5 Verbatim Rep. of Proc. (VRP) at 107. Bolanos stated she heard someone going into the rooms and running from room to room, apparently looking for something.  Bolanos thought there were at least two people upstairs due to the amount of shuffling and movement.  Villaseñor locked his bedroom door.  About a minute later, Bolanos heard someone kick in the door at the top of the stairs leading to the basement and then run down the stairs.  Villaseñor retrieved his gun.  After someone kicked Villaseñor's bedroom door, shooting erupted.

The gunfire lasted about 10 seconds.  Bolanos saw that Villaseñor had fallen onto the bed, and she ran into the closet and called 911.  *Id*. at 113; Ex. 22 (recording of Bolanos's emergency call); 7 VRP at 562-63 (Bolanos's 911 call stated that "two men shot her boyfriend, [and] that she could still hear them in the upstairs portion of the house while she was on the phone.").  Bolanos heard "them run upstairs" and leave.  5 VRP at 115.  This sequence of events happened over about 2 minutes.

Law enforcement arrived and found the front door open, Villaseñor's bedroom door broken, and Villaseñor shot five times.  Villaseñor was pronounced dead.  Shell casings were scattered in Villaseñor's room, the area outside the bedroom, and the

bathroom across the hall. Officers found over 20 shell casings and bullet fragments fired from two guns, Villaseñor's gun and the gun fired by the intruder. The second gun was never recovered. Drops of blood were found on the steps at the front door of the house (in which Villaseñor rented a basement room) and on the street, on the wall by the stairwell connecting the basement and upstairs, and on a "movie screen" in the downstairs common area. *Id.* at 189. Blood on the wall appeared to be from "transfer and smear." *Id.*[1]

Abraham Madrigal and his family, who lived upstairs from Villaseñor, arrived at the house later that night. Madrigal found the house "trashed"; and though over $80,000 in cash was stored in the house, none of the money was missing. 6 VRP at 464. Madrigal later noticed that a gun case and extended magazines had been taken.

Tacoma Police Department contacted the officers investigating the burglary and shooting, explaining there was an investigation into Villaseñor with footage of the house. The footage was dark, and details were difficult to see.

A few days later, police received an anonymous tip that another individual, Sebastian Beltran, may have been involved in the shooting. Officers learned that Beltran's car had been impounded. At the impound lot, officers observed Beltran arrive with his mother and a woman later determined to be a party protected by a no-contact order prohibiting Beltran from contacting her. Beltran was arrested on suspicion of violating the order. Officers obtained a warrant for the car Beltran arrived in, finding a

---

[1] A transfer typically occurs when blood from one location is transferred by touch and placed somewhere else. 5 VRP at 189.

gun box and magazine matching the description of items that had been taken from the burglary. Officers later showed Madrigal the items, and he confirmed they were his. *Id*. at 466 (Madrigal testified that the items "were mine."). After obtaining a separate warrant for Beltran's vehicle, officers found shell casings and live rounds in the trunk, and blood in the backseat area as well as on the seats, cushions, and the console cupholder. The blood from the rear passenger seat matched Roberts. Other samples were mixed, with Roberts as one of two contributors. Samples from the scene of the shooting also matched Roberts.

In January 2019, officers discovered a social media account associated with Roberts, linking to a music video in which Roberts raps about being mentioned on *Washington's Most Wanted*, the felony murder charge, and saying, "'Kick his door, stick 'em up.'" 7 VRP at 530. A few months later, Roberts was arrested; his left hand was injured and he told officers that he had been shot in the hand a few months before.

At a bench trial, Roberts testified that he had bought heroin from Villaseñor a "handful of times" in the house where Villaseñor was shot. 8 VRP at 638. On the day of the shooting, Roberts testified that he had taken heroin, had gone to Villaseñor's apartment to buy more, had walked downstairs, and had seen a person who appeared to be Hispanic holding a gun. That person, Roberts testified, shot him in the left hand. He stumbled around and ran away, hearing gunshots as he left. Roberts was bleeding and indicated that was likely how his blood was transferred to the movie screen and the steps outside the house. Roberts stated that when he heard about *Washington's Most Wanted*, he rapped about it as a "mockery." *Id*. at 645. Roberts testified he did not hang out or

4

associate with "Hispanic individuals" and had never met Beltran or been in his car. *Id*. at 647.

The trial judge found Roberts guilty. The court entered written findings of fact and conclusions of law, specifically finding that Roberts's testimony was not credible and that he entered the house intending to steal. The court held that Roberts committed burglary with another person and caused Villaseñor's death in the course of the crime. The court also found that the State did not prove Roberts was the shooter or that he knew the other person was armed prior to the shooting, and concluded Roberts was guilty of felony murder as an accomplice predicated on the burglary.

In July 2022, Roberts was sentenced. His offender score was calculated at 4, with the court adding a point because the crime was committed while Roberts was on community custody for prior drug convictions from Texas. In 2017, Roberts was sentenced to five years of probation (community supervision) in Texas for possession of a controlled substance. Also in 2017, Roberts asked that his supervision be transferred from Texas to Washington to be administered by the Department of Corrections (DOC), which was granted. CP at 43 (DOC letter explaining the community custody transfer). For the felony murder conviction, Roberts received an exceptional sentence downward based on mitigation evidence. Roberts received 384 months of confinement plus 120 months for the mandatory firearm enhancement to run concurrently.

Roberts appealed, arguing that his conviction should be overturned for numerous reasons, the majority of which the Court of Appeals rejected. *State v. Roberts*, 32 Wn. App. 2d 571, 594-611, 553 P.3d 1122 (2024) (rejecting claims of ineffective assistance of

counsel, improper admission of testimony on Roberts's rap lyrics, improper admission of testimony on demonstrative evidence of the shooting, and race-based prosecutorial misconduct). Relevant here, Roberts argued that insufficient evidence supported his conviction for felony murder as an accomplice and because the evidence established the affirmative defense to felony murder. Roberts also argued that his offender score was miscalculated. *Id*. at 584-98, 611-13. The Court of Appeals disagreed. It affirmed Roberts's conviction while identifying an alleged conflict in the case law for sufficiency of the evidence challenges in bench trials "in the hope of highlighting the need for resolution" from this court. *Id*. at 588. The court also affirmed the calculation of Roberts's offender score, concluding that a point must be added to the score because the felony murder offense was committed while Roberts was under community custody for an out-of-state drug conviction.

The Court of Appeals reversed the victim penalty assessment and remanded for the trial court to strike that assessment from Roberts's judgment and sentence and to determine whether to impose interest on the restitution award.

Roberts sought review, which we granted on the issues of sufficiency of the evidence and offender score calculation. *State v. Roberts*, 4 Wn.3d 1009.

## ANALYSIS

Roberts argues that his conviction should be reversed for insufficient evidence and that his offender score was miscalculated. Roberts contends a court reviewing a sufficiency claim arising from a bench trial is limited to considering whether the evidence supports the written findings and conclusions. He argues that the trial court here found

there was no evidence that he was the shooter and that the Court of Appeals erred when it considered facts not found by the trial court. Alternatively, Roberts argues, his conviction is insufficient because the affirmative statutory defense to felony murder was proved and the trial court must consider it. Roberts also claims his Texas drug possession convictions do not constitute community custody for the purpose of adding a point to his offender score under RCW 9.94A.525(19). We disagree.

1. Sufficiency of the Evidence Test

In a criminal prosecution, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *see* U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. The purpose of a sufficiency of evidence inquiry is to "'ensure that the trial court fact finder "rationally appl[ied]" the constitutional standard required by the due process clause of the Fourteenth Amendment [to the United States Constitution], which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt.'" *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014) (first alteration in original) (quoting *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 502, 299 P.3d 37 (2013) (quoting *Jackson*, 443 U.S. at 317-18)). *Jackson* set out the constitutional standard for sufficiency of the evidence. There, a defendant was convicted in a bench trial and the Court accepted review to determine the standard to be applied in federal habeas proceedings on insufficiency claims. *Jackson*, 443 U.S. at 309, 318. This inquiry does not require the reviewing court to determine "'whether *it* believes that the evidence at the

7

trial established guilt.'" *Id*. at 318-19 (quoting *Woodby v. Immig. & Naturalization Serv.*, 385 U.S. 276, 282, 87 S. Ct. 483, 17 L. Ed. 2d 362 (1966)). Rather, the question is "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. Importantly, the Court stated that judicial review includes "*all of the evidence*" considered in a light most favorable to the prosecution. *Id*. This court adopted *Jackson* in *Green* II, 94 Wn.2d at 221.

Green II contrasted *Jackson*'s "'reasonable doubt'" rule with this court's earlier "'substantial evidence'" rule. *Id*. at 222. In an earlier case, the court applied a substantial evidence test that considered whether the State produced substantial evidence establishing circumstances from which a jury could reasonably infer the fact to be proved. *State v. Green*, 91 Wn.2d 431, 442, 588 P.2d 1370 (1979) (*Green* I). The test made it "unnecessary for the court to be satisfied of guilt beyond a reasonable doubt," and only that substantial evidence supports the State's case or particular element. *Id*. at 443. After *Jackson*, this court reconsidered the substantial evidence standard and instead adopted *Jackson*'s beyond a reasonable doubt test. *Green* II, 94 Wn.2d at 221-22.

In 2014, this court decided *Homan* and included language on the substantial evidence rule, which has caused the concern referred to in the Court of Appeals opinion below. 181 Wn.2d at 105-06. *Homan* began by stating the correct standard: to determine whether sufficient evidence supports a conviction, a court views the evidence in the light most favorable to the prosecution and whether a rational fact finder could have found the elements of a crime beyond a reasonable doubt. The court then stated

"following a bench trial, appellate review is *limited* to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Id*. at 105-06 (emphasis added) (citing *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)).

Division One of the Court of Appeals has interpreted *Homan* as applying a different and inconsistent standard. *State v. Stewart*, 12 Wn. App. 2d 236, 246, 457 P.3d 1213 (2020) (Dwyer, J., concurring). Judge Dwyer's concurrence in *Stewart* identified conflicts between *Homan* and *Jackson*: the *Jackson* test arose from a bench trial and the opinion did not distinguish between convictions resulting from jury or bench trials; *Homan* focuses review on the result reached by the trial judge rather than "'*any* rational trier of fact'" as required by *Jackson*, and *Homan* limited review of evidence to that set out in a judge's factual findings as opposed to *Jackson*, which plainly requires consideration of "'*all of the evidence*.'" *Id*. at 244 (quoting *Jackson*, 443 U.S. at 319). Homan also reviews only the judge's factual findings in a light most favorable to the prosecution rather than *all* the evidence; and finally, *Homan* requires only "substantial evidence" to support facts that support a conviction rather than the United States Supreme Court's requirement of proof beyond a reasonable doubt. *Id*. at 246-47; *State v. I.J.S.*, No. 82559-3-I, slip op. at 6-8 (Wash. Ct. App. Mar. 14, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/825593.pdf (echoing *Stewart*).

In this case, Division One reiterated its concerns with *Homan* in the hope that we would clarify the "conflicting standards." *Roberts*, 32 Wn. App. 2d at 588. The court then reviewed the evidence in Roberts's case under its interpretation of *Homan* and

9

*Jackson*, concluding that under either test, sufficient evidence supports the conviction for felony murder predicated on burglary as an accomplice. *Id*.

Here, Roberts disagrees that any conflict exists between *Jackson* and *Homan* yet argues that the Court of Appeals erred in considering "all the evidence, even evidence the [trial] court did not include in its findings." Pet. for Rev. at 21. In Roberts's view, *Homan* allows appellate review of the record only to determine if factual findings supporting guilt are based on sufficient evidence. Otherwise, Roberts claims, appellate courts will "reweigh the evidence and substitute their judgment for that of the trier of fact," and "disregard the trial court's careful findings, credibility assessments, and resolution of the evidence." *Id.* at 23. We reject this argument.

Roberts does not squarely address *Jackson*'s articulation of the sufficiency test. *Jackson* stated explicitly that when a defendant has been found guilty, preserving the fact finder's role as the weigher of evidence comes from a "legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." 443 U.S. at 319. As Judge Dwyer pointed out, *Jackson* stemmed from a bench trial and the Supreme Court did not distinguish between jury trials and bench trials in setting out the sufficiency test. *Stewart*, 12 Wn. App. 2d at 246-47. *Jackson* recognized that appellate courts must consider *all* the evidence presented to determine whether a rational fact finder could find the charged crime proved beyond a reasonable doubt, not merely whether the evidence supported a *trial judge's* findings and conclusions.

A court's findings and conclusions are not intended to limit appellate review. In a criminal bench trial, a court must enter written findings of fact and conclusions of law. CrR 6.1(d). The purpose of the rule is to assist an appellate court's review of the questions raised on appeal. *State v. Head*, 136 Wn.2d 619, 622, 964 P.2d 1187 (1998). When a trial court does not enter written findings, remand for entry is proper. Written findings and conclusions *facilitate* appellate review. For example, a prosecutor who is required to prepare findings will necessarily need to focus attention on the evidence supporting each element of the charged crime, as will the trial court. Written findings and conclusions also enable an appealing defendant to focus on issues arguably supported "by the record" and avoid pursuing arguably meritless issues. *Id*. at 623.

Nor is a trial court required to make a finding on all the evidence introduced. *State v. Mewes*, 84 Wn. App. 620, 622, 929 P.2d 505 (1997). Findings must address all ultimate facts and material issues that carry influence or are essential to the conclusions. *Id*. (citing *Wold v. Wold*, 7 Wn. App. 872, 875, 503 P.2d 118 (1972)). Ultimate facts are the essential and determinative facts supporting a conclusion; they must support the conclusions of law.

Further, considering all the evidence presented does not mean a court will reweigh evidence as Roberts claims. Appellate courts defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Killingsworth*, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012). These decisions are the exclusive province of the fact finder. Considering all presented evidence in a sufficiency challenge, as *Jackson* commands, does not bring these decisions into

11

question. To the extent issues of conflicting testimony, credibility, and persuasiveness are memorialized in a court's written findings and conclusions, it follows that a reviewing court will defer to those decisions—even when analyzing *all* of the evidence.

This reasoning also applies to Roberts's assertion that a reviewing court violates double jeopardy because it reconsiders issues the fact finder affirmatively resolved against the State. Again, *Jackson*'s direction to review all the evidence is not tantamount to permitting that court to reconsider *all* factual findings. Determinations of credibility are for the fact finder and are "not subject to review." *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (citing *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). *Jackson* explained that its sufficiency standard did not undermine the fact finder's exclusive role—its standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 443 U.S. at 319. It is well settled that appellate courts review the action of a trial court but do not weigh evidence or substitute their opinions for those of the fact finder. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). "[W]here a trial court finds that evidence is insufficient to persuade it that something occurred, an appellate court is simply not permitted to reweigh the evidence and come to a contrary finding." *Id*. This would improperly invade on the trial court's role if an appellate court found compelling something the trial court found unpersuasive.

While *Homan* could be read to suggest that review of a bench trial sufficiency claim is limited to written findings and conclusions, the test for sufficiency of the

12

evidence was not before that court. *Homan* misspoke when it cited *Stevenson*'s

substantial evidence standard, but nonetheless applied the correct test, the *Green*

II/*Jackson* reasonable doubt test. 181 Wn.2d at 106 ("We hold that there was sufficient

evidence that Homan lured a child . . . . The State has met its burden by proving all the

necessary elements of luring beyond a reasonable doubt." (citing *Winship*, 397 U.S. at

362-65)); *see also* Pet. for Rev. at 19 (quoting *State v. Vasquez*, 178 Wn.2d 1, 6, 309 P.3d

318 (2013) (rejecting the "'substantial evidence standard in determining the sufficiency

of the evidence because it does not require proof beyond a reasonable doubt'")).[2]

Our decision in *State v. Conaway* provides some clarity on *Homan*. 199 Wn.2d

742, 512 P.3d 526 (2022). *Conaway* stated that the *Green* II/*Jackson* sufficiency test

does not turn on the labels "'sufficient'" or "'substantial.'" *Id*. at 749 n.2. *Green* II

rejected the substantial evidence test because it conflicted with the United States Supreme

Court's articulation of sufficiency that takes into account the due process clause's

requirement of proving elements of a crime beyond a reasonable doubt. *Conaway*

concluded that the court below had correctly applied the due process standard when it

---

[2] The Court of Appeals has cited *Homan* when examining sufficiency of the evidence claims for bench trials, but seemingly cures *Homan*'s misstatement by also noting that evidence is sufficient if any rational fact finder, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *E.g.*, *State v. M.B.*, No. 59338-6-II, slip op. at 12 (Wash. Ct. App. Apr. 22, 2025) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2059338-6-II%20Unpublished%20Opinion.pdf (quoting *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017)); *State v. Parkhill*, No. 58145-1-II, slip op. at 5 (Wash. Ct. App. July 2, 2024), https://www.courts.wa.gov/opinions/pdf/D2%2058145-1-II%20Unpublished%20Opinion.pdf (same).

considered whether the charged crimes were proved beyond a reasonable doubt, even though it cited *Homan* for the sufficiency test.

Despite *Homan*'s misstatement, *Jackson* is and remains the test for sufficiency of the evidence. *Green* II adopted *Jackson*, and this court has repeatedly applied it. *E.g.*, *State v. Zghair*, 4 Wn.3d 610, 567 P.3d 1 (2025); *State v. Johnson*, 188 Wn.2d 742, 751, 399 P.3d 507 (2017); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); *State v. Rhoads*, 101 Wn.2d 529, 531, 681 P.2d 841 (1984); *State v. Delmarter*, 94 Wn.2d 634, 637-38, 618 P.2d 99 (1980).

We take this opportunity to clarify that *Homan* did not alter the sufficiency of the evidence test, which *Jackson* established and this court adopted in *Green* II. *Homan* misspoke in its recitation of the case law but did not apply that incorrect standard. Rather, *Homan* properly considered whether a rational fact finder could find the charged crimes proved beyond a reasonable doubt. 181 Wn.2d at 106.

2. Sufficient Evidence Supports Roberts's Conviction

Roberts also contends that because the trial judge found he was not the shooter, the State may not relitigate this point and insufficient evidence supports accomplice liability.

As an initial matter, the trial judge did not find that Roberts was *not* the shooter. The judge found that the State failed to prove this beyond a reasonable doubt. In any event, the State does not seek to relitigate whether Roberts was the shooter. Rather the State argues that sufficient evidence supports Roberts's conviction for felony murder predicated on burglary as an accomplice. We agree with the State.

14

We review challenges to a trial court's conclusions of law de novo. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008). We defer to the trier of fact for purposes of resolving conflicting testimony and persuasiveness of the evidence. *Killingsworth*, 166 Wn. App. at 287. In claiming insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Salinas*, 119 Wn.2d at 201. Inferences are drawn in the State's favor. The conviction will be upheld if any rational fact finder could have found the essential elements beyond a reasonable doubt. *Green* II, 94 Wn.2d at 221-22. Circumstantial evidence and direct evidence are equally reliable when determining the sufficiency of the evidence. *Delmarter*, 94 Wn.2d at 638.

RCW 9A.32.030(1)(c) states that a person is guilty of first degree murder if they commit or attempt to commit burglary in the first degree and "in the course of or in furtherance of such crime or in immediate flight therefrom, [they], or another participant, causes the death of a person other than one of the participants." If a participant in a predicate felony commits a homicide during the commission of or in flight from a felony, the other participant has "'by definition'" committed felony murder. *Roberts*, 32 Wn. App. 2d at 588 (quoting *State v. Carter*, 154 Wn.2d 71, 79, 109 P.3d 823 (2005)). A participant is a principal (the person who directly participates in the commission of a crime) or an accomplice. *Id.* at 589. RCW 9A.08.020(3)(a) defines someone as an "accomplice" of another if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, [a person]: (i) [s]olicits, commands, encourages, or requests such other person to commit it; or (ii) [a]ids or agrees to aid such other person in

15

planning or committing it." Accomplices may be liable for another person's criminal conduct provided the State proves the substantive crime was committed and the accused acted with knowledge that they were aiding in the commission of the offense. *Roberts*, 32 Wn. App. 2d at 589 (quoting *State v. Lazcano*, 188 Wn. App. 338, 363, 354 P.3d 233 (2015), and citing *Carter*, 154 Wn.2d at 77-78)).

Jennifer Bolanos testified that multiple people were involved in the burglary based on the sounds and shuffling movement she heard. The blood evidence at the house and in Beltran's car match Roberts, placing him and the car at the scene of the burglary and shooting. Roberts testified that he went to Villaseñor's basement apartment and saw someone he did not know holding a gun, and that somehow his blood was transferred into Beltran's car. The judge found Roberts's testimony was "not credible" and was not persuaded by Roberts's explanation. CP at 103. We defer to the trier of fact on witness credibility. *Killingsworth*, 166 Wn. App. at 287. Taken together, the evidence supports that Roberts acted with another person to commit burglary (the missing gun box and magazines), during the course of which Villaseñor was killed. Sufficient evidence supports accomplice liability in this case.

Roberts attempts to dispute Bolanos's testimony and isolate incriminating evidence in a piecemeal approach to sufficiency. Roberts characterizes Bolanos's statements as "fleeting auditory impressions" and a "scant sensory hypothesis" that do not support multiple individuals committing the crime. Suppl. Br. of Pet'r at 19. That Bolanos did not directly observe the individuals who broke into her boyfriend's apartment does not contradict her testimony that she heard sounds from multiple people.

16

Roberts then points to Bolanos's testimony, the blood at the scene, and the blood in Beltran's car as pieces of evidence that *individually* fail to support two people acting together to commit a burglary. We do not examine whether isolated facts sufficiently support a conviction, we view the "*evidence as a whole*" in a light most favorable to the State. *State v. Goodman*, 150 Wn.2d 774, 783, 83 P.3d 410 (2004) (emphasis added) (citing *Salinas*, 119 Wn.2d at 201). The whole of the evidence puts Roberts at the scene where more than one individual was heard and puts Roberts in the car owned by Beltran, who was associated with the recovery of stolen items. This supports Roberts's conviction for felony murder predicated on burglary as an accomplice.

3. Alternative Sufficiency Argument

Roberts next argues that insufficient evidence supports his conviction on an alternative basis: because evidence establishes the affirmative defense to felony murder. We reject this argument.[3]

The affirmative defense to felony murder requires a defendant to prove four elements by a preponderance of the evidence. RCW 9A.32.030(1)(c). The defendant must prove that they

> (i) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and

---

[3] The State urges us not to reach Roberts's "alternative" sufficiency claim because we granted review only on whether sufficient evidence supports Roberts's conviction. This issue is not a sufficiency claim that can be raised for the first time on appeal, and it was not preserved—Roberts did not raise it at trial. The Court of Appeals declined to reach it for that reason. *Roberts*, 32 Wn. App. 2d at 584 n.3. We granted review to consider whether sufficient evidence supported Roberts's conviction and Roberts advanced the claim as an alternative basis for insufficient evidence in his supplemental brief. It arguably fits into our grant of review, therefore we address it.

(ii) [Were] not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and

(iii) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and

(iv) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

*Id.*

Though a petitioner may always raise a sufficiency claim for the first time on appeal, this is not a sufficiency argument because Roberts did not raise the affirmative defense.[4] A defendant waives their right to raise an affirmative defense by failing to do so at trial. *City of Seattle v. Lewis*, 70 Wn. App. 715, 718-19, 855 P.2d 327 (1993). Roberts argued a different theory at trial. Roberts argued that he was not involved with the robbery; he was at the scene to buy heroin but ran away. The trial judge did not find this defense credible.

On the merits, this claim would have judges in bench trials consider an affirmative defense regardless of whether the defendant argues it or not. Roberts equates an affirmative defense to a lesser included charge; courts sitting as fact finders may independently consider lesser offenses even absent a party's request. Suppl. Br. of Pet'r at 22 (citing *State v. Peterson*, 133 Wn.2d 885, 893, 948 P.2d 381 (1997); *In re Pers. Restraint of Heidari*, 159 Wn. App. 601, 609, 248 P.3d 550 (2011); *State v. Jollo*, 38 Wn.

---

[4] That is not to say such an argument is never a sufficiency claim. If Roberts had raised an affirmative defense at trial and argued on appeal that the evidence was insufficient for reasons concerning that defense, it would constitute a sufficiency claim that may be raised for the first time on appeal.

App. 469, 474, 685 P.2d 669 (1984)). Roberts asserts there is no meaningful difference between a court's ability to consider a lesser offense not requested by a party but established by the evidence and a statutory defense (like felony murder) not requested by the defense but established by the evidence. Where the court's findings and conclusions support this defense, "the court should apply the law germane to its findings and consider it." *Id*. at 24; Pet. for Rev. at 39 ("the court was *obligated* to consider whether the defense was established" (emphasis added)).

As the State's briefing explains, "a trial court's consideration of unraised defenses deprives the State of the opportunity to rebut them, through its own case or cross-examination." Suppl. Br. of Resp't at 22. Moreover, a judge as the trier of fact "may" but is not obligated to consider a lesser included offense. *Heidari*, 159 Wn. App. at 609.

Roberts also does not meaningfully address the Court of Appeals' conclusion that the affirmative defense was not proved in its review of Roberts's ineffective assistance claim. *See* Suppl Br. of Pet'r at 24. Roberts argued below that his defense counsel was ineffective for not raising the statutory defense to felony murder that the record supported. *Roberts*, 32 Wn. App. 2d at 596. The Court of Appeals disagreed, holding that the evidence did not establish the affirmative defense by a preponderance of the evidence standard.

In sum, Roberts's alternative sufficiency argument is essentially an affirmative defense claim. We hold that a trial court has no obligation to independently consider an unargued affirmative defense.

19

4. Offender Score Calculation

Finally, Roberts contends that the trial court incorrectly added a point to his offender score. The State disagrees, arguing that Roberts was under community custody when the felony murder offense was committed and thus a point must be added to his score. We agree with the State.

We review a sentencing court's calculation of an offender score de novo. *State v. Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011) (citing *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997)).

The State proved Roberts's two previous convictions for possession of a controlled substance from Texas. These convictions were not included in Roberts's offender score because they were not comparable to any Washington offense post-*State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021). The offenses continued to be valid in Texas, despite *Blake*, because they included a mens rea element, and Roberts does not argue these convictions are invalid here. Because Roberts was under community supervision for those offenses in Washington when he committed felony murder, the trial court added one point to his offender score. RCW 9.94A.525(19).

RCW 9.94A.525(19) provides, "If the present conviction is for an offense committed while the offender was under community custody, add one point. For purposes of this subsection, community custody includes community placement or postrelease supervision, as defined in chapter 9.94B RCW."

20

"Community custody" is defined as "that portion of an offender's sentence of confinement in lieu of earned release time or imposed as part of a sentence under this chapter and served in the community subject to controls placed on the offender's movement and activities by the [DOC]." RCW 9.94A.030(5).

Roberts now argues that the plain language of the Sentencing Reform Act of 1981 (SRA) does not permit adding points to an offender score for offenses committed while on community custody unless the underlying crime was committed in Washington. RCW 9.94A.525(19), .030(5). Specifically, no out-of-state crime would be "sentence[d] under this chapter"—that is, the SRA. Suppl. Br. of Pet'r at 26, 27 (alteration in original); RCW 9.94A.030(5).

Roberts reads RCW 9.94A.525(19) too narrowly. He focuses solely on the provision's reference to "community custody" and the definition of that term in RCW 9.94A.030(5), defining "community custody" as "imposed as part of a sentence under *this chapter*." (Emphasis added.) But the SRA recognizes that community custody includes more than just subsection .030(5)'s definition. RCW 9.94A.525(19) also states that "community custody includes community placement or postrelease supervision, as defined in chapter 9.94B RCW."

RCW 9.94B.020 defines "community supervision," "community placement," and "postrelease supervision" separately. Different definitions generally indicate different treatment. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007). However, the Court of Appeals has stated that community custody means the same thing as community placement or community supervision for sentencing purposes. *See State v.*

21

*Hunt*, 128 Wn. App. 535, 542, 116 P.3d 450 (2005) (defendant "stipulated he was on community supervision at the time of the offense but denied he was on community placement. *Either finding* increases an offender score by one point." (emphasis added)); *State v. Reed*, 116 Wn. App. 418, 423, 66 P.3d 646 (2003).

An unpublished case is useful on this point. *State v. Shipman*, noted at 129 Wn. App. 1024, 2005 WL 2211257, at \*6 (2005), explains that under former RCW 9.94A.525(17) (2002), a judge must increase a defendant's offender score by one point if they were on community placement at the time of the current conviction. "Community placement" is defined as "'that period during which the offender is subject to the conditions of community custody and/or postrelease supervision.'" *Id*. (quoting former RCW 9.94A.030(7) (2003)). The defendant argued he was on community supervision rather than community placement, attempting to make a distinction "where none exists." *Id*. "Community supervision is a form of postrelease supervision that constitutes community placement under [former] RCW 9.94A.030 and [former] RCW 9.94A.525." *Id*.

These cases were decided before the legislature reorganized the SRA. In 2008, the provisions relating to community placement, community supervision, and postrelease supervision were moved to a newly created chapter, chapter 9.94B RCW, and apply to offenses committed before July 1, 2000. *State v. Buck*, 2 Wn.3d 806, 816, 544 P.3d 506 (2024). Placement in a different chapter and specifying a prior date range may limit chapter 9.94B RCW's applicability. However, our interstate compact on supervision of adult offenders recognizes that Washington's DOC will supervise offenders from other

states that do not use the same terms for community custody conditions. *See* RCW 9.94A.745; *State v. King*, 162 Wn. App. 234, 240, 253 P.3d 120 (2011) (Washington's "[l]egislature understood there were times when Washington supervision needed to equate with the practices of other states."). Washington courts have also recognized that community custody is equivalent to community supervision for sentencing purposes. *E.g.*, *Hunt*, 128 Wn. App. at 542; *Reed*, 116 Wn. App. at 423.

*Buck* supports this reasoning. The SRA essentially abolished Washington's parole system but left in place some postrelease supervision systems such as community supervision as they were being phased out. *Buck*, 2 Wn.3d at 816. This created confusion. To fix things, the legislature moved old postrelease supervision programs to the newly created chapter 9.94B RCW and made all provisions in chapter 9.94A RCW relate to community custody. *Id*. *Buck* concluded that this legislative history clarifies that within chapter 9.94A RCW, lawmakers intended to equate "community supervision" with "community custody," even for offenses (like Roberts's) occurring *after* July 1, 2000. *Id*. at 817 (quoting FINAL LEGISLATIVE REPORT, 56th Leg. (Wash. 1999) ("Community supervision for . . . violent offenses, crimes against persons . . . committed after July 1, 2000, is community custody.")).

Taken together, RCW 9.94A.525(19) states that community custody includes community placement and postrelease supervision defined in chapter 9.94B RCW. RCW 9.94B.020's community placement, postrelease supervision, and community supervision are essentially the same. Thus, RCW 9.94A.525(19) requires a point to be added to an offender score if the current offense was committed while on community custody,

including community placement, postrelease supervision, and community supervision. *Id.* at 816-17; *Hunt*, 128 Wn. App. at 542; *Reed*, 116 Wn. App. at 423. Roberts's felony murder conviction was committed while he was under community supervision for the Texas conviction, which qualifies as community custody. RCW 9.94A.525(19).

Roberts relies primarily on *King*, 162 Wn. App. at 240, to argue that supervision status increases a score only when it was imposed under the SRA. In *King*, a defendant was being supervised in Oregon for an Oregon conviction at the time the defendant committed a Washington offense. 162 Wn. App. at 240. The Court of Appeals considered RCW 9.94A.525(19) as well as the definitions for community custody in RCW 9.94A.030(5), and community placement and postrelease supervision in chapter 9.94B RCW. *Id.* at 239-40. Based on these definitions, the court concluded that RCW 9.94A.525(19)'s command to add a point if the current offense was committed under community custody applies "only to the various forms of postcustodial supervision applied to offenders under the SRA." *Id.* at 240. Washington lawmakers "did not equate *other states' supervision* of felons with Washington's supervision for purposes of scoring crimes committed in this state." *Id.* (emphasis added).

Roberts, unlike the defendant in *King*, was not under out-of-state supervision when he committed felony murder in Washington. Roberts asked to have his supervision transferred from Texas to Washington, which was granted under the terms of the interstate compact. *King* is inapposite.

Roberts also argues that the additional point added to his offender score was improper under comparability principles. According to Roberts, allowing a point based

on community supervision for Texas drug possession convictions is equivalent to including the convictions themselves, even though they cannot be compared to any Washington offense. Roberts conflates separate inquiries.

RCW 9.94A.525(3) addresses how to treat foreign convictions, requiring that they "be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(19) concerns offenses committed while on community custody.

To Roberts, the Court of Appeals ignored comparability when it scored his Texas supervision sentence because it reasoned his sentence was imposed pursuant to a constitutional conviction. Roberts is incorrect.

In the Court of Appeals, Roberts claimed he was on community custody for void convictions that also voided his community custody status. *Roberts*, 32 Wn. App. 2d at 612. *Blake* invalidated Washington's strict liability drug possession statute. 197 Wn.2d at 195. Convictions based on an invalid statute may not be included in an offender score. *Roberts*, 32 Wn. App. 2d at 612 (quoting *State v. Markovich*, 19 Wn. App. 2d 157, 173, 492 P.3d 206 (2021)). Penalties imposed under an invalid statute are void, including community custody terms. *Id*. (quoting *Markovich*, 19 Wn. App. 2d at 174, and citing *State v. French*, 21 Wn. App. 2d 891, 896-97, 508 P.3d 1036 (2022)). In *French*, an offender was serving a term of community custody for a prior conviction for possession, which *Blake* invalidated. 21 Wn. App. 2d at 897. The Court of Appeals below reasoned that unlike *French*, Roberts was not on community custody pursuant to a conviction

under a void statute and he made no argument that his Texas convictions were unconstitutional. *Roberts*, 32 Wn. App. 2d at 612-13.

At trial, the State agreed that Roberts's Texas convictions were not *comparable* to any Washington statute and were not included in the offender score. *Roberts*, 32 Wn. App. 2d at 611-12. This satisfies comparability concerns. Nonetheless, Roberts's Texas convictions remain valid and resulted in a valid term of community custody. That term was transferred to Washington at Roberts's request. Roberts was not punished for a noncomparable conviction, he was penalized because he committed an offense while under community custody for a valid out-of-state conviction, governed by RCW 9.94A.525(19).

We hold that the trial court properly added a point to Roberts's offender score under RCW 9.94A.525(19).

CONCLUSION

*Jackson* established the test for sufficiency of the evidence for all criminal trials, jury and bench. This court adopted *Jackson* in *Green* II. While our decision in *Homan* mischaracterized the test as being concerned with substantial evidence, *Homan* correctly applied the beyond a reasonable doubt test under *Jackson* and *Green* II. Applying *Green* II/*Jackson* here, sufficient evidence supports Roberts's conviction for felony murder predicated on burglary as an accomplice. Finally, an additional point was properly added to Roberts's offender score because he committed felony murder while under community custody for valid Texas convictions. RCW 9.94A.525(19). Accordingly, we affirm the Court of Appeals.

26

_____
Madsen, J.

WE CONCUR:

_____ _____
Stephens, C.J.           Yu, J.

_____ _____
Johnson, J.           Montoya-Lewis, J.

_____ _____
González, J.           Whitener, J.

_____ _____
Gordon McCloud, J.        Mungia, J.